UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| GREGORY CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-437 CAN |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On July 14, 2006, Plaintiff Gregory Carter (Carter) filed his complaint in this Court. On December 1, 2006, Carter filed an opening brief and he asks this Court to enter judgment in his favor or to remand this matter to the Commissioner. On March 5, 2007, Defendant Social Security Administration (SSA) filed its response brief. On March 15, 2007, Carter filed his reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURE**

On March 19, 2003, Carter filed his application for Disability Insurance Benefits (Tr 12). Carter is insured for Disability Insurance Benefits through May 15, 2002 (Id.). Carter claims he is entitled to benefits pursuant to Title II of the Social Security Act. See 42 U.S.C. §§ 416(i), 423, 1381a.

On June 22, 2005, Carter appeared at a hearing before an Administrative Law Judge (ALJ), who subsequently issued a denial of Carter's claim (Tr. 12-19). Carter appealed the ALJ's decision to the Appeals Council. (Tr. 4-6) The Appeals Council denied review, and as a

result, the ALJ's decision became the Commissioner's final decision (Id.). 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on July 14, 2006, Carter filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**II.   ANALYSIS**

    A.   Facts

Carter was a 44 year old male at the time the ALJ denied his claims (Tr. 48). He has prior work experience as a tank gauger, standard construction worker, and a wheel specialty technician (Tr. 67).

    1.   Health History

On May 29, 2002, Carter had surgery to repair a herniated disc[1] and stenosis[2] in his cervical spine (Tr. 120). After surgery, Carter began having back spasms, back pain, and he was hospitalized with lower lobe pneumonia[3] and pleurisy[4] (Tr. 101-07, 118). Carter continued to have pain and complications in his neck, back, and postural arm (116-18). Carter saw a number of doctors to assist him with his recovery and health problems, but his primary treating physician was Charles R. Lyons Jr., M.D. (Dr. Lyons).

---

[1] A protrusion of a fragmented intervertebral into the intervertebral foramen with potential compression of a nerve root or into the spinal canal with potential compression of the cauda equina (bundle of spinal nerve roots) in the lumbar region. Stedman's Medical Dictionary 549 (28th ed. 2006).

[2] Stricture of any canal or orifice. Stedman's Medical Dictionary 1832.

[3] An inflamation of the lobar part of the lung characterized by a virtually homogeneous consolidation often due to infection. Stedman's Medical Dictionary 1523-24.

[4] Inflamation of the membrane enveloping the lungs and lining the walls of the pulmonary cavities, which is the space left existing if the lung is removed. Stedman's Medical Dictionary 330, 1512.

Dr. Lyons has treated Carter for eleven years, and Dr. Lyons treated Carter periodically after his surgery (Tr. 169-72, 202).  In September of 2002, Carter saw Dr. Lyons regarding neck and shoulder pain and headaches (Tr. 171).  In October of 2002, Dr. Lyons saw Carter again for his neck and shoulder pain, and he recommended that he proceed with an epidural block,[5] use a heating pad, and continue with his medications of Neurontin and Flexeril (Tr. 170A).  In January of 2003, Carter again saw Dr. Lyons, and Dr. Lyons indicated that Carter was having more severe and persistent pain, which had been aggravated by the epidural block (Tr. 170).  Dr. Lyons put Carter on Mobic, Paxil, and Extra Strength Tylenol (Id.).  In March and February of 2003, Dr. Lyons found that Carter had myofascial pain and possibly fibromyalgia[6] (Tr. 169).

In Dr. Lyons' opinion, Carter cannot do repetitive bending, heavy lifting, or other strenuous activity involving the use of his upper extremities or back (Tr. 203).  Also, Dr. Lyons opined that Carter was unable to work more than one to two hours at a time without resting because of his pain (Id.).  Dr. Lyon concluded that Carter was severely disabled (Id.).

2.  Daily Activities

At the time of the hearing, Carter was being paid by the Manchester Recreation Association (Tr. 280).  Carter coached various sports teams and he directed the operation of a park facility, which included watching games, turning lights on and off, locking bathrooms, mowing lawns, and other general care (Tr. 280-82).  However, because of Carter's problems, he had a very erratic schedule.  (Tr. 284).  He generally worked four to five days a week, but he

---

[5] An obstruction in the epidural, or of the outside, space; used inaccurately to refer to epidural anesthesia. Stedman's Medical Dictionary 230, 654.

[6] Fibromyalgia is a common syndrome of chronic widespread soft tissue pain accompanied by weakness, fatigue, and sleep disturbances, the cause of which is unknown.  Stedman's Medical Dictionary 725

3

came and went as he pleased and frequently took rest breaks (Tr. 285). Carter indicates that he suffers from random, painful headaches, body pain, and fatigue because of sleep apnea (Tr. 285-290). Generally, he claims he has to alternate sitting and standing every half hour, he could maybe walk a quarter of a mile, and he can only remain comfortable for a lengthy period in a reclining chair (Tr. 291-92).

        3.      <u>Hearing Testimony</u>

At the hearing, Carter's wife and brother both testified (296-304). Both essentially corroborated Carter's claims of pain and lack of mobility, but both also indicated that he used to be quite active before he had his health problems (<u>Id</u>.). Both also admitted to assisting Carter by doing his job duties for him at the recreational facility (<u>Id</u>.).

The issues this Court must resolve is whether the ALJ's determination to not award Carter's treating physician controlling weight was supported by substantial evidence, and whether the ALJ failed to appropriately assess Carter's credibility.

    B.    <u>Standard of Review</u>

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. <u>See</u> 42 U.S.C § 405(g); <u>Briscoe v. Barnhart</u>, 425 F.3d 345, 351 (7th Cir. 2005); <u>Haynes v. Barnhart</u>, 416 F.3d 621, 626 (7th Cir. 2005); <u>Golembiewski v. Barnhardt</u>, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. <u>Haynes</u>, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary

support or an adequate discussion of the issues.  Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  However, an ALJ's legal conclusions are reviewed *de novo*.  Haynes, 416 F.3d at 626.

      C.      Carter's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Carter must establish that he was "disabled."  See 42 U.S.C. § 423(a)(1)(D).  The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled.  The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352.  If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If there is an affirmative answer at either step three or step five, then there is a finding of disability.  Briscoe, 425 F.3d at 352.  At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner.  See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404.  However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant

can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The ALJ found Carter had not engaged in substantial activity and that he had a severe impairment, but that Carter did not meet any impairments listed in the regulations. Thus, the ALJ determined that Carter had the residual functional capacity to perform less than a full range of light work (Tr. 15). Specifically, he could lift and carry twenty pounds occasionally and ten pounds frequently (Id.). He could sit for six hours a day and stand and walk, in combination, for about six hours in an eight hour day with the option to switch between sitting and standing at will (Id.). Furthermore, the ALJ found Carter could not climb ramps, stairs, ladders or scaffolds, and that he was limited to occasional balancing, stooping, kneeling, crouching, and crawling (Id.). The ALJ also found that Carter was limited to brief or superficial contact with the public (Id.). As a result, the ALJ determined that Carter could perform other work that existed in the economy (Tr. 18). The ALJ found that Carter's residual functional capacity allowed him to perform other work that existed in significant numbers in the national economy at step five. As a result, he was not disabled.

Carter makes two arguments attacking the ALJ's findings. First, Carter argues that the ALJ failed to give the appropriate amount of deference to Carter's treating physician in making the residual functional capacity assessment of Carter. Second, Carter argues that the ALJ failed to properly evaluate Carter's credibility.

      1.     <u>The ALJ's evaluation of Carter's treating physician is not supported by substantial evidence</u>

An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). "This rule . . . seems to take back with one hand what it gives with the other, and as a result to provide little in the way of guidance to either." Id. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). However, medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Clifford, 227 F.3d at 870. When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh. Hofslien, 439 F.3d.at 377 (citations omitted). Unfortunately, there is no bright line for when a physician's opinion is inconsistent with other substantial evidence in the record, and it is essentially a case by case determination depending on the circumstances. Id.

Carter's treating physician was Dr. Lyons. The ALJ discussed Dr. Lyons' findings, but the ALJ made only the following conclusion regarding Dr. Lyons' opinions:

> While Dr. Lyons opined that the claimant is unlikely able to return to an occupation requiring strenuous activity of his upper extremities, the lifting limitation to no more than 20 pounds occasionally and 10 pounds frequently in the residual functional capacity accommodates these complaints.

(Tr. 17). The ALJ's opinion lacks an adequate discussion of the issues and fails to create the requisite bridge from the evidence to her conclusions. And while the ALJ is not required to award Dr. Lyons controlling weight, because he is a treating physician the ALJ must at a minimum articulate her reasoning for not doing so. See 20 C.F.R. § 404.1527(d)(2) ("We will

7

always give good reasons in our notice of determination or decision for the weight we give your source's opinion."); see also Vitarelli v. Seaton, 359 U.S. 535, 545 (1959) (indicating that a federal agency is obliged to follow its regulations).  In this instance, the ALJ failed to meet this minimal threshold.

Carter is not entitled to benefits merely because his treating physician labels him as disabled, and medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record.  Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001); Clifford, 227 F.3d at 870.  But here, the ALJ never indicated whether Dr. Lyons' opinions are internally inconsistent or inconsistent with other evidence in the record.  The SSA argues that this Court is to assume the ALJ found Dr. Lyons' testimony to be inconsistent with other evidence in the record, specifically that Dr. Lyons' opinions were not consistent with the consulting physicians that the ALJ awarded controlling weight.  However, without any discussion as to how Dr. Lyons' opinions are inconsistent with the consulting physicians, this Court cannot discern whether such a decision is reasonable or not.  This Court is "not in a position to draw factual conclusions on behalf of the ALJ."  Prince v. Sullivan, 933 F.2d 598, 603 (7th Cir. 1991).  The ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626.  Simply put, the ALJ has failed to provide that bridge in this case.

Furthermore, this Court cannot say that it was harmless error for the ALJ not to discuss Dr. Lyons' opinions.  Regardless of Dr. Lyons' ultimate conclusion that Carter was disabled, Dr. Lyons opines that Carter would have to take a rest break every one to two hours.  According to the testimony of the VE, there would be no jobs available in the economy if Carter had to rest every couple of hours (Tr. 313).  If this opinion were incorporated into the ALJ's residual

functional capacity finding, there would be no jobs in the economy that Carter could perform. Therefore, clearly Dr. Lyons' opinions were important, yet the ALJ did not address them. It is axiomatic that the ALJ decision cannot stand if it lacks an adequate discussion of the issues. Lopez, 336 F.3d at 539.  Consequently, a remand is warranted to allow the ALJ to re-examine the opinions of Dr. Lyons.

### 2. The ALJ's determination of Carter's credibility was supported by substantial evidence

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003). As a bottom line, Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. Golembiewski, 322 F.3d at 915; Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an individual's allegations are not credible. Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)); Golembiewski, 322 F.3d at 915.  Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski v Halter, 245 F.3d 881, 887 (7th Cir. 2001).

Regarding Carter's credibility, the ALJ found that:

> [T]he claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely persuasive.  Specifically, despite the claimant complaining of a lack of energy and lose [sic] of interest in things, he has continued to coach girl's softball, golf, and other sports.  (citation omitted).

(Tr 17).[7] Carter argues that this finding was erroneous because there are parts of the record that indicate Carter <u>used</u> to coach, but that he no longer does. As a result, Carter argues the ALJ's finding was based on a misunderstanding of the record.

The ALJ relied on a report generated by a consulting psychologist. Within that report, the psychologist recites that Carter indicates he both used to coach and that he would be retiring from coaching after the summer. Essentially, these facts are inconsistent. It was the ALJ's prerogative to determine which fact was more believable or accurate. Therefore it was reasonable for the ALJ to find that Carter was engaging in coaching activities. It is not the responsibility of this Court to re-weight the evidence. The ALJ did not rely on a misinterpretation or misunderstanding of the record so as to make his analysis unreasonable.

Finally, Carter argues that the ALJ ignored an entire line of evidence because he did not explain why he found the statements of Carter's brother and wife to be unpersuasive. Both Carter's wife and brother testified to substantially the same information as Carter himself. Both indicated that Carter was frequently in pain, did fewer activities than he once did, and that he could do very little in any given day (Tr. 295-305). When a witness's testimony does not constitute a separate line of evidence and merely reiterates and corroborates the claimant's testimony, an ALJ does not need to address it. <u>See</u> <u>Books v. Chater</u>, 91 F.3d 972, 980 (7th Cir. 1996); <u>Carlson v. Shalala</u>, 999 F.2d 180, 181 (7th Cir. 1993). The ALJ merely needs to articulate his assessment to assure this Court that he considered the most important evidence so

---

[7]Carter also argues that the ALJ failed to explain why the objective medical evidence does not support Carter's complaints of pain. However, this arguments misunderstands the ALJ's finding. The ALJ does not indicate he doubts Carter's complaints of pain. In fact, the ALJ states, "the undersigned finds the claimant's . . . impairments could reasonably be expect to produce the alleged symptoms." Instead, the ALJ found that Carter's ability to engage in coaching activities suggests he was able to perform substantial activity despite his pain. Therefore, to the extent that Carter is arguing that the ALJ improperly discounted Carter's complaints of pain, that argument is without merit.

that the ALJ's reasoning can be traced.  Books, 91 F.3d at 980.  Because Carter's wife and brother testified to substantially the same information as Carter himself, the ALJ did not commit error by failing to address their testimony in more detail as Carter suggests.

In summary, this Court cannot say the ALJ relied upon a misunderstanding of the record in making his credibility finding.  Also, the ALJ properly declined to address the testimony of the lay witnesses in more detail because their testimony was substantial similar to the claimant's testimony.

### III.  CONCLUSION

The ALJ's determination that Carter's treating physician was not entitled to controlling weight was not supported by substantial evidence, but the ALJ's analysis of the Carter's credibility was supported by substantial evidence.  As a result, this Court **GRANTS** Carter's request and this case is **REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g).[8]  The clerk is instructed to term the case.

**SO ORDERED.**

Dated this 17th Day of May, 2007.

S/Christopher A. Nuechterlein<br>
Christopher A. Nuechterlein<br>
United States Magistrate Judge

---

[8] Carter asks for this Court to enter an award of benefits rather than a remand.  An award of benefits is appropriate only where the record clearly indicates only one result.  Campbell v. Shalala, 988 F.2d 741, 744 (7th Cir. 1993) ("[T]he record is not so clear that we can award or deny benefits.").  In the present case, because the ALJ engaged in an inadequate discussion of Carter's treating physician, this Court cannot tell whether Carter is entitled to benefits or not.  A remand, rather than an outright award of benefits, is more appropriate in this case to allow the ALJ to explore and re-weigh Dr. Lyon's opinions.